RHONDA P. PERKINS
VA Bar No. 75300, rperkins@ftc.gov
AMANDA R. GRIER
VA Bar No. 78531, agrier@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., NW, CC-8528
Washington, DC 20580
Tel: 202-326-3222 (Perkins), 202-326-3745 (Grier)
Fax: 202-326-3395

STACY R. PROCTER (Local Counsel)
CA Bar No. 221078, sprocter@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Tel: 310-824-4300, Fax: 310-824-4380

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>APARTMENT HUNTERS, INC., *et al.*,<br><br>Defendants. | No. 8:18-CV-01635-AG (DFMx)<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT ITS *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE COURT'S ORDER |

## I. INTRODUCTION

On September 13, 2018, the Court entered a Temporary Restraining Order ("TRO") barring Defendants from marketing government-subsidized rental housing and prohibiting them from making deceptive claims. Defendants have been violating the TRO, and continue to do so even after receiving a warning from the Court at the September 24, 2018 hearing. Among other violations, Defendants continue to advertise access to government-subsidized housing, conduct that the TRO expressly enjoins. Defendants' violative and deceptive conduct continue to harm consumers. Plaintiff, the Federal Trade Commission ("FTC"), respectfully moves this Court to order Defendants to show cause why they should not be held in civil contempt for violating the TRO and to order coercive contempt sanctions. In support of this Motion, the FTC submits the following Memorandum of Points and Authorities.

## II. PROCEDURAL HISTORY

On September 11, 2018, the FTC filed a Complaint and Application for TRO to bring an immediate halt to Defendants deceptive practices. (Docket Nos. 1 and 9). On September 13, 2018, the Court entered the TRO and ordered Defendants to show cause why a preliminary injunction should not issue. (Docket No. 14). The Court held a show cause hearing on September 24, 2018 and found that the TRO would be converted into a Preliminary Injunction. (Docket No. 31). Per the Court's instructions, the FTC lodged a proposed Preliminary Injunction. (Docket No. 30). In response to the FTC's Notice of Lodging a Proposed Preliminary Injunction, Defendants filed their Position Regarding Proposed Preliminary Injunction Order and Request for Time to Comply.[1] (Docket No. 32).

---

[1] Defendants' filing appears to be a motion for reconsideration, in which Defendants repeat their argument that it is difficult to comply with the Court's order because it will hurt their business. *See* Def. Mot., Docket No. 24. This filing, which is supported by no evidence, does not meet the burden imposed by L.R. 7-18 as it fails to raise material difference in fact or law from what was previously presented to the Court.

1

## III. STATEMENT OF FACTS

### A. Defendants Received Notice of the TRO

The Certification of Counsel in support of the Application for TRO describes in detail that beginning on August 27, 2018, the FTC notified Defendants several times that the FTC would file a Complaint and Application for a TRO. (Docket No. 9-2, ¶ 6-15). Defense counsel received the initial documents filed on September 11, 2018 with the Court by electronic mail (Def. Mot., Docket No. 24, ¶ 11.), and the exhibits on September 12, 2018. *Id.* On September 13, 2018, each corporate defendant, Apartment Hunters, Inc., Rental Homes Listings Inc., Real Estate Data Solutions, Inc., and UAB Apartment Hunters, LT, and Steven Shayan were personally served with the TRO. (Proof of Service, Docket Nos. 15-20). As set forth in the FTC's Supplemental Briefing to the TRO Application, Kevin Shayan received the TRO by email on September 18, 2018 (Docket No. 23 at 2; Plaintiff's Opposition, Docket No. 25-1 ¶ 7 at 19), and was personally served on September 19, 2018. (Proof of Service, Docket Nos. 21-22).

Both Steven and Kevin Shayan attended the show cause hearing on September 24, 2018, with their counsel, and heard the Court's instructions that Defendants must comply with TRO or face a contempt proceeding.

### B. Defendants Continue to Market Government-Subsidized Rental Housing in Violation of the TRO

Section I of the TRO enjoins Defendants from:

> advertising, marketing, promoting, offering for sale, or selling…access to rental listings for properties that have been approved for, accept, or purportedly accept Housing Vouchers or any type of government rent subsidy.

Section II enjoins Defendants, in connection with the advertising or selling of subscriptions or access to rental listings, from:

using in any domain names, Uniform Resource Locators (URLs) for public-facing websites…mobile applications, or business names or aliases, any of the following terms: Section 8, Voucher, Subsidized, Affordable housing, Low-income, Public housing, Income-based, or Project-based.

As of the time of this filing, Defendants continue violating the TRO by operating WeTakeSection8.com and LowIncomeHousing.rentals.

### 1. WeTakeSection8.com

In violation of Sections I and II of the TRO, Defendants continue to advertise on WeTakeSection8.com "Section 8 and Affordable Housing" that allows consumers to "[s]earch Section 8, low income, and affordable apartments...." (EX 37, at 1024-25, 1039). The homepage claims that the website was created to "help find government assisted housing and residential rentals that accept housing Vouchers" and to have an "extensive database of the government-subsidized housing." (Id.). The About US page makes similar claims, such as, "[W]e list properties that accept Section 8 vouchers, affordable housing, and government subsidized rentals." (EX 37, at 1024-25, 1040). The mobile application for the website makes similar claims. Specific listings on WeTakeSection8.com state, "Every effort is taken to verify the availability of the home of your choice. Due to the nature of the Section 8 HUD Housing Program the listings rent fast." (EX 37, at 1041).

Defendants appear to have now removed the pay wall and might no longer accept payments for subscriptions to WeTakeSection8.com. (EX 37, at 1025). However, the advertising of access to properties that accept government rent subsidies is a violation of Section I of the TRO. The use of "Section 8" in the URL and the mobile application violates Section II of the TRO.[2]

---

[2] Defendants testified at their depositions that one of their payment processors has refused to process additional payments due to the FTC's case, which raises questions of whether the decision to stop processing was made for them.

3

### 2. LowIncomeHousing.rentals

In violation of Sections I and II of the TRO, Defendants continue to advertise "Low Income and Affordable Rentals" that allows consumers to "[s]earch 750,000+ Low income, Section 8, and low priced apartments...." (EX 37, at 1023, 1028). Defendants claim on the homepage that the website "was created to help you find low income based and affordable rentals… We manage one the most up-to-date sites for rentals of apartment, houses, townhomes that are already setup to accept the vouchers." (EX 37, at 1028). The About US page makes similar claims, such as, "LowIncomeHousing.rentals provides you with lists of government subsidized housing..." (EX 37, at 1023, 1029). The About Us page also claims to "aggregate all government housing databases and that its "unique, date-sensitive, rental software updates listings on a daily basis… to maintain one of the largest and most updated databases of voucher program rentals…" (EX 37, at 1023, 1029). The mobile application for the website makes similar claims.

For LowIncomeHousing.rentals, Defendants appear to have now removed the pay wall and might no longer accept payments for subscriptions to the website. (EX 37, at 1024). However, the advertising of access to properties that accept government rent subsidies is a violation of Section I of the TRO. Defendants' use of "Low-income" in the URL and on the mobile application violates Section II of the TRO.

### C. Defendants Refused to Answer Questions About Compliance with Provisions I and II of the TRO During Depositions

On September 25, 2018, one day after the show cause hearing, the FTC deposed Steven and Kevin Shayan pursuant to the expedited discovery provisions of the TRO. The FTC conducted three depositions: one of the corporate defendants with both Kevin and Steven Shayan testifying as corporate designees, and depositions of the Shayan brothers in their individual capacities.

During each deposition, counsel for the FTC asked Kevin and Steven Shayan to review Sections I and II of the TRO and explain what they and the corporate defendants were doing to comply with the Order. Each time, Kevin and Steven Shayan's counsel instructed them not to answer in light of the Court's and counsel's comments with respect to possible contempt proceedings and that his clients may incriminate themselves and face possible jail.[3] Defendants answered questions about compliance with other provisions of the TRO.

## IV. ARGUMENT

### A. **Defendants are in Contempt of Court Because They Continue to Violate the TRO**

This Court has the inherent authority to enforce its orders through civil contempt. *Shillitanti v. United States*, 384 U.S. 364, 370 (1966). The FTC, as a party to the case, may invoke the court's powers by filing a civil contempt motion. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 445-46 (1911). Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993). A party moving for civil contempt must show, by clear and convincing evidence, that (1) a court order was in place; (2) the order required certain conduct by the alleged contemnor; and (3) the alleged contemnor failed to comply with the order. *Consumer Financial Protection Bureau v. Naja Jalan*, , U.S. Dist. LEXIS 189683 at *23, No. SACV 12-2008 AG-AN (C.D. Cal July 23, 2013); *see Federal Trade Comm'n v. Affordable Media LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999). Once the court determines that the movant has satisfied this three-part showing, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to

---

[3] Defendants have yet provide complete financial disclosures as required by Section VIII of the TRO. However, Defendants have provided some disclosures and supporting documentation and testified that they are preparing the remaining documents. The FTC is working with Defendants to receive these additional documents and hope to avoid the need for Court intervention on this subject.

comply." *Id.* Substantial compliance with a court order is a valid defense to civil contempt. *Dual-Deck*, 10 F.3d at 695.

The evidence discussed above shows clearly and convincingly that Defendants continue to violate a TRO that has been in place since September 13, 2018. Sections I and II of the Order enjoined Defendants from: (1) advertising access to and selling subscriptions for properties that accept any type of government rent subsidy; and (2) using terms such as Section 8 and Low-income in URLs and mobile applications. The TRO is clear and definite. When asked during depositions if they are complying with Sections I and II of the Order, Defendants refused to answer because it may "incriminate" them. Defendants knew about the Order, heard the Court instructing them to comply with the Order at the show cause hearing, but, nevertheless, continue to advertise rental listings using expressly prohibited terms.

Instead of complying with the Court's Order, Defendants have chosen to propose an alternative; but complying with the Court's Order is not optional. Defendants have not taken all steps within their power to comply with the Order and cannot show that they have substantially complied. All of the elements of civil contempt are met and Defendants should be held in contempt of court for ongoing violations of this Court's Order.

### B. Defendants Should Be Subject to Coercive Contempt Remedies

"Sanctions in civil contempt are permitted for two purposes: (1) to coerce the [contemnor] into compliance with the court's order; and (2) to compensate the complainant for losses sustained as a result of the contumacious behavior." *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947)). "Civil contempt sanctions . . . are only appropriate where the contemnor is able to purge the contempt by his own affirmative act and 'carries the keys of his prison in his own pocket.'" *United States v. Ayres*, 166 F.3d 991, 997 (9th Cir. 1999) (quoting *Int'l Union v. Bagwell*, 512 U.S. 821, 828 (1994)).

1    Courts that hold a party in contempt should fashion the sanction considering
2    the "character and magnitude of the harm threatened by continued contumacy and
3    the probable effectiveness of any suggested sanction in bringing about the result
4    desired." *United Mine Workers*, 330 U.S. at 304. "Sanctions may be imposed to
5    coerce the contemnor to comply with the court's order, but may not be so excessive
6    as to be punitive in nature." *Citronelle-Mobile Gathering Inc. v. Watkins*, 943 F.2d
7    1297, 1304 (11th Cir. 1991). Sanctions may take the form of a daily fine,
8    compensatory fine, attorneys' fees or coercive incarceration. *Id.*; *see Ayres*, 166
9    F.3d at 995 ("One of the paradigmatic civil contempt sanctions 'is a per diem fine
10   imposed for each day a contemnor fails to comply with an affirmative court
11   order.'") (quoting *Bagwell*, 512 U.S. at 829).

12   A strong coercive remedy is necessary to finally secure Defendants'
13   compliance with the TRO. Accordingly, the FTC requests that the Court order
14   Defendants to cease all advertising and marketing of government-subsidized rental
15   listings (as expressly required by the TRO), and if they fail to do so by 5:00 pm
16   Pacific Time on the first day after the Court enters its order, to impose a coercive
17   civil contempt fine of $1000 per day of continued noncompliance.

18   This fine is wholly appropriate given the "the probable effectiveness of any
19   suggested sanction." *United Mine Workers*, 330 U.S. at 304. This Court has
20   already ordered Defendants to stop this conduct. Defendants persisted. The next
21   step, then, is a fine that deprives them of income from their prepaid rental listing
22   service—a fine "designed to compel future compliance with a court order." *Ayres*,
23   166 F.3d at 995.

24   Civil contempt is, of course, "avoidable through obedience." *Ayres*, 166
25   F.3d at 995. In order to purge their Contempt, the FTC also requests that
26   Defendants be ordered to show, by affidavit filed with the Court by 5:00 pm
27   Pacific Time on the first day after the Court enters its order, that Defendants, their
28

agents, employees, and any other persons in active concert or participation with them, have:

    1) Ceased advertising, marketing, promoting, offering for sale, or selling access to rental listings for properties that have been approved for, accept, or purportedly accept any type of government rent subsidy; and

    2) Ceased, in connection with the advertising, marketing, promoting, offering for sale or selling of subscriptions or access to rental listings, using in any domain names, URLs for public-facing websites, keywords purchased to advertise Defendants' services on search engines mobile applications, or business names or aliases, any of the following terms: Section 8, Voucher, Subsidized, Affordable housing, Low-income, Public housing, Income-based, or Project-based.

This report should specify what steps Defendants have taken to comply with the Court's Order.

Because Defendants have shown a blatant disregard for this Court's Order, the FTC also requests that any entity hosting or registering domains for Defendants be ordered to suspend Defendants' websites marketing access to rental listings that accept government rent subsidies.

In sum, the FTC requests that the Court:

1. Hold Defendants in civil contempt for their violations of the Court's orders;

2. Order Defendants to comply with the terms of Court's Order by 5:00 pm Pacific Time on the day following the entry of the Court's order finding Defendants in contempt;

3. Impose a fine of $1,000 per day of Defendants continued noncompliance; and

1    4.    Order that Defendants may purge their contempt by filing a report
2    with the Court detailing what steps they have taken to comply with the TRO. The
3    Defendants must show, by affidavit, that Defendants, their agents, and employees
4    have ceased (1) advertising or selling access to rental listings for properties that
5    have been approved for, accept, or purportedly accept any type of government rent
6    subsidy and (2) using prohibited terms in connection with the selling or advertising
7    of rental listings; and

8    5.    Order that any entity hosting any webpage or website for Defendants
9    and any domain registrar providing domain name registration services for any
10   Defendant must ensure that those websites cannot be accessed by the public.

### C. The Court May Hold Defendants in Contempt Without a Full Evidentiary Hearing if They Fail to Raise a Genuine Issue for Hearing

"This circuit has repeatedly held … that finding a party in civil contempt without a full-blown evidentiary hearing does not deny due process of law to a contemnor." *Ayres*, 166 F.3d at 995 (citing cases). If the FTC's evidence is "uncontroverted," the Court may find Defendants in contempt summarily. *Id.* (quoting *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1324 (9th Cir. 1998)); *see also Hoffman ex rel. NLRB v. Beer Drivers and Salesmen's Local Union No. 888*, 536 F.2d 1268, 1277 (9th Cir. 1976) ("A trial court may in a contempt proceeding narrow the issues by requiring that affidavits on file be controverted by counter-affidavits and may thereafter treat as true the facts set forth in uncontroverted affidavits."). Defendants' continued disregard for this Court's Order should be dealt with swiftly to ensure compliance and avoid potential future harm to consumers.

## V. CONCLUSION

For all the foregoing reasons, the FTC respectfully requests that the Court grant the Application. The FTC has attached a proposed order to show cause and a proposed contempt order.

Respectfully submitted,

Dated: September 27, 2018

/s/Rhonda P. Perkins
Rhonda P. Perkins
Amanda R. Grier

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION